******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELLIS ROBINSON ET AL. *v.* WILLIAM
TINDILL ET AL.
(AC 43995)

Elgo, Cradle and Clark, Js.

*Syllabus*

The plaintiffs, who owned residential property adjacent to that of the defendants, T and E, sought declaratory and injunctive relief and damages for trespass resulting from T's construction of a fence that encroached on the plaintiffs' property. The parties previously had constructed privacy fences on their properties on opposite sides and within inches of a chain-link fence that was located on a portion of the boundary line between their backyards. T thereafter constructed an extension to the defendants' privacy fence and, without the plaintiffs' permission, removed portions of the chain-link fence. T also constructed a split rail fence that extended the privacy fence along or near the boundary line. A surveyor thereafter found that a portion of the split rail fence encroached on the plaintiffs' property. The defendants filed special defenses alleging that they were entitled to establish a divisional fence, pursuant to statute (§ 47-43), on the boundary of their property. The defendants further claimed that § 47-43 permitted placement of the fence on the plaintiffs' property. The trial court granted the plaintiffs' motion for summary judgment as to liability, finding against the defendants on the plaintiffs' claim of trespass, and against T for conversion as to the chain-link fence. The court concluded that a majority of the length of the fences T constructed was not located on the dividing line of the parties' properties and, thus, could not be considered a divisional fence pursuant to § 47-43. After a hearing in damages, the court granted the plaintiffs injunctive relief and awarded them nominal damages for conversion as to the chain-link fence and for trespass as to the split rail fence. On appeal, the defendants claimed, inter alia, that the court erred in finding them liable for trespass because the fence at issue was compliant with § 47-43. *Held*:

1. The defendants could not prevail on their claim that the trial court improperly found them liable for trespass, which was based on their assertion that their privacy fence was a divisional fence pursuant to § 47-43 and was within the permitted limit of intrusion on the plaintiffs' property: contrary to the defendants' assertion, the clear and unambiguous language of § 47-43 requires a divisional fence to be centered on the property line at issue, the parties did not dispute that the defendants' fence was not centered on the property line, and the defendants failed to demonstrate how any of the other statutes they cited pertaining to fences undermined the plain language of § 47-43; moreover, this court found unavailing the defendants' assertion that the placement of their fence did not constitute a trespass because the fence did not exceed the width permitted by § 47-43 for materials used to construct a divisional fence, as an interpretation of § 47-43 that allows a property owner to construct a divisional fence on a neighbor's property would render the centering language in § 47-43 superfluous; furthermore, it was undisputed that the split rail fence encroached on the plaintiffs' property, and the middle of the fence did not sit on the mutual boundary line of the parties' properties.

2. This court declined to review the defendants' unpreserved claim that the trial court improperly found E liable for trespass because the split rail fence was a fixture appurtenant to the property she owned, the defendants having failed to argue to the trial court that the plaintiffs did not properly raise or brief the issue of "trespass of ownership by fixture"; moreover, the two paragraphs of argument in the defendants' opposition to the plaintiffs' motion for summary judgment was devoid of analysis or legal authority that was relevant to the bases on which they challenged on appeal the trial court's judgment as to E.

3. The trial court's judgment finding T liable for conversion could not stand, as the plaintiffs never pleaded conversion in their complaint or briefed it in their motion for summary judgment; because the plaintiffs' complaint

alleged that T's conduct in dismantling portions of the chain-link fence constituted trespass, the defendants were never given notice or afforded an opportunity to defend a claim of conversion; accordingly, the judgment was reversed as to the court's finding that T was liable to the plaintiffs for conversion.

Argued April 15—officially released October 12, 2021

*Procedural History*

Action, inter alia, to recover damages for trespass, and for other relief, brought to the Superior Court in the judicial district of New Haven and transferred to the judicial district of Middlesex, where the court, *Domnarski, J.*, granted the plaintiffs' motion for summary judgment as to liability; thereafter, following a hearing in damages, the court, *Frechette, J.*, rendered judgment for the plaintiffs, from which the defendants appealed to this court. *Reversed in part*; *judgment directed*.

*Michael A. Zizka*, for the appellants (defendants).

*Joshua C. Shulman*, for the appellees (plaintiffs).

*Opinion*

CRADLE, J. This case arises from the erection of a fence by the defendants, William Tindill (Tindill) and Erika Tindill, between their property and the adjacent property owned by the plaintiffs, Ellis Robinson and Nicole Robinson. The defendants appeal from the judgment of the trial court rendered in favor of the plaintiffs after a hearing in damages and the court's prior order granting the plaintiffs' motion for summary judgment as to liability and finding both defendants liable for trespass and Tindill liable for conversion. On appeal, the defendants claim that the court erred (1) in finding them liable for trespass because the fence at issue was a statutorily compliant divisional fence pursuant to General Statutes § 47-43, (2) in finding Erika Tindill liable for trespass, even though she played no role in erecting the fence, and (3) in finding Tindill liable for conversion because the plaintiffs failed to plead, or present any evidence in support of, a claim for conversion. We affirm in part and reverse in part the judgment of the trial court.

The following undisputed facts, as set forth by the court, and procedural history are relevant to our resolution of this appeal. The plaintiffs own property located at 113 Glen View Terrace in New Haven. The defendants reside at 119 Glen View Terrace. "The plaintiffs acquired their property in 2003, and . . . Erika Tindill acquired her property, [where she resides with Tindill], in 2004. There is a chain-link fence located on a portion of the mutual boundary line between the plaintiffs' and the defendants' properties. This chain-link fence, which had been installed prior to when the parties acquired their respective premises, can be described as located between the backyards of the two lots. Over the years, the plaintiffs and the defendants each constructed their own privacy fences on opposite sides of the chain-link fence. The sides of these privacy fences were very close to, meaning within inches of, the chain-link fence, resulting in the chain-link fence being sandwiched between the two closely built privacy fences.

"On July 8, 2017 . . . Tindill commenced a fence-building project. Between July 8 and 11, 2017, Tindill constructed a six foot high, approximately thirty foot long extension to his existing privacy fence. This extension made the [defendants'] entire privacy fence approximately sixty feet long. The privacy fence, as extended, runs along the mutual boundary line but is located entirely on Erika Tindill's property. To accommodate the post and panels for the extended privacy fence, Tindill removed the end corner post, as well as the supporting top metal rod, of the chain-link fence." "[T]he plaintiffs never gave permission to, or authorized, Tindill to remove the fence post and top rod. There is no evidence that the removed fence parts have been reinstalled or replaced."

"Beginning on July 11, 2017, Tindill also constructed a three and one-half [foot] high split rail fence. The split rail fence extended from the privacy fence to a point in the vicinity of the sidewalk alongside Glen View Terrace. Thus, to summarize, from the undisputed facts, it appears that Tindill constructed three fences, total, along the mutual boundary line on three separate occasions: (1) the original privacy fence, (2) the extension to the privacy fence, and (3) the split rail fence. . . .

"Tindill [averred that he] installed the split rail fence 'along or near the [m]utual [b]oundary . . . .' After Tindill constructed the split rail fence, the plaintiffs hired Michael D. Phipps, a licensed surveyor, to survey the neighboring properties and officially establish the location of the mutual boundary line. The survey map [that] Phipps prepared, which both parties have submitted along with their respective motions for summary judgment, indicates that the mutual boundary line is 100 feet in length. . . . In an affidavit dated April 8, 2019, Phipps stated that the split rail fence [that] Tindill constructed encroaches on the plaintiffs' property. . . . Although it does not appear that the split rail fence encroaches on a large area of the plaintiffs' property, the defendants do not dispute that a 'few inches' of the split rail fence posts may lie on the plaintiffs' side of the mutual boundary line. . . . The defendants have not submitted their own professionally prepared survey, do not dispute Phipps' survey and, in fact, also rely on the survey in their efforts to prove their case." (Citations omitted.) "It is undisputed that at least one of the vertical posts of the split rail fence [that] Tindill installed extends onto the plaintiffs' property. There is no evidence to establish that the plaintiffs gave the defendants permission to install a fence post that would be located on the plaintiffs' property."

On May 9, 2018, the plaintiffs commenced this action by way of a one count complaint, alleging that Tindill destroyed the chain-link fence that had existed on the boundary of the parties' properties and constructed a "new, approximately six foot high wooden stockade fence" in its place. The plaintiffs further alleged that Tindill also constructed "an approximately three and one-half foot wood rail fence" along another portion of the parties' property boundary. The plaintiffs alleged that Erika Tindill is the owner of the property at 119 Glen View Terrace and that, "acting through . . . Tindill, [she] caused the fence to be built such that it encroaches on the land of [the] plaintiffs . . . ." The plaintiffs sought a declaratory judgment establishing the boundary line of the parties' properties, an injunction requiring the defendants to remove their fence from the plaintiffs' land, and damages for trespass.

On July 12, 2018, the defendants filed an answer and two special defenses to the plaintiffs' complaint. In their first special defense, the defendants alleged that they

were entitled to establish a divisional fence on the boundary of their property pursuant to General Statutes §§ 47-43 and 47-49, and, to the extent that it is located on the plaintiffs' property, "such placement is partial and no greater than allowable pursuant to the aforesaid statutes." In their second special defense, the defendants alleged that the plaintiffs had allowed the chain-link fence "to deteriorate and to become a useless, unsightly nuisance in violation of . . . § 47-43." They alleged that they were entitled to seek remedies for such nuisance pursuant to General Statutes § 47-51,[1] and that they were entitled to erect a divisional fence to replace it pursuant to §§ 47-43 and 47-49. The plaintiffs thereafter denied all of the allegations contained in the defendants' special defenses.

In April, 2019, both parties filed motions for summary judgment, each arguing that they were entitled to judgment as a matter of law. In support of their motions, both parties filed memoranda of law, affidavits and exhibits. Both parties represented to the court that the essential facts underlying their claims were not in dispute. Following a hearing on the parties' motions for summary judgment, the court, *Domnarski*, *J.*, issued a memorandum of decision filed October 8, 2019. The court rendered summary judgment in favor of the plaintiffs as to liability only, against both defendants on the plaintiffs' claim of trespass, and against Tindill for conversion as to the plaintiffs' claim related to the chain-link fence.

On February 20, 2020, the court, *Frechette*, *J.*, held a hearing in damages. On February 26, 2020, the court issued a written order awarding "injunctive relief in favor of the plaintiffs against the defendants as follows: within thirty days of the date of this order, at their sole expense, the defendants are to relocate the split rail fence and fence posts as depicted in exhibit 2, so as not to encroach on the plaintiffs' property. The defendants are to also repair any damages to the plaintiffs' property and restore it to its natural condition." The court also awarded nominal damages to the plaintiffs of $50 for "conversion of the chain-link fence," and nominal damages of $50 for trespass as to the split rail fence. This appeal followed.

I

The defendants first claim that, because the fence at issue was a divisional fence pursuant to § 47-43, the trial court erred in finding them liable for trespass.. The defendants argue that the court erred in concluding that their fence was not a divisional fence because it was not centered on the mutual boundary line. They further contend that, although the fence was not centered on the property line, it was well within the limit of intrusion onto the plaintiffs' property that is permitted by § 47-43. We are not persuaded.

In concluding that the defendants' fence was not a divisional fence under § 47-43, the trial court set forth the following additional facts: "At some point in time, Phipps . . . installed stakes in the ground, which Tindill believed to be on the boundary line. The defendants have submitted photographs that show the survey stakes and the defendants' privacy fence. It is clear from one of the photographs that the defendants' original privacy fence, and the 2017 extension thereto, were installed on the defendants' side of the boundary line. . . . [Thus] a majority of the length of the fences [that] Tindill constructed were not located *on* the dividing line of the two properties. The survey map shows that, where the split rail fence begins, in the vicinity of the privacy fence, it is located on the defendants' side of the line. As the fence travels toward the sidewalk and the lot corner, however, it gradually approaches and then enters onto the plaintiffs' property. . . . [T]he defendants have not contested Phipps' statement in his affidavit that a portion of the split rail fence is on the plaintiffs' property.[2]

"In his affidavit, Tindill stated that he 'constructed a [split rail] fence along or near the [m]utual [b]oundary, running from the extended privacy fence to Glen View Terrace.' . . . [Tindill] further state[d], 'Before installing the extension of the privacy fence and the [split rail] fence, I measured the distance of the line of installation from both the house on the Tindill [p]roperty and the house on the Robinson [p]roperty to be sure that the fence would be located on the [m]utual [b]oundary or within the Tindill [p]roperty.' . . . [T]he privacy fence and its extension are on the defendants' side of the boundary. These privacy fences constitute approximately two-thirds of the length of the fences between the two properties. It appears from the survey that only a portion of the split rail fence is actually located *on* the boundary line." (Citations omitted; emphasis in original; footnote added.)

The court further found: "[T]he mutual boundary line was established by the original subdivision map referred to on the subject survey and in . . . Erika Tindill's deed [to her property] . . . . Although the mutual boundary line had been established, it appears that Tindill did not accurately locate the boundary line when he took his measurements. As a result, he did not place all of the split rail fence on his side of the boundary, as he did with the other fences [that] he built. Furthermore, if there was an intention to construct a divisional fence, the split rail fence and the privacy fence should have been built on the established dividing line for its entire length." (Citation omitted.) The court concluded: "Thus . . . because most of the total length of the fences Tindill constructed is not on the dividing line, the fences cannot be considered a 'divisional fence' within the meaning of § 47-43 or the related fence stat-

utes."[3]

On appeal, the defendants argue that the trial court misinterpreted the language of § 47-43. Specifically, the defendants challenge the court's determination that § 47-43 requires that a divisional fence be centered on the mutual boundary line. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, [t]he legislature is always presumed to have created a harmonious and consistent body of law . . . [so that] [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . Because issues of statutory construction raise questions of law, they are subject to plenary review on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Bemer*, Conn. , , A.3d (2021).

With the foregoing principles in mind, we begin with the statutory language at issue in this case. Section 47-43 provides in relevant part: "The proprietors of lands shall make and maintain sufficient fences to secure their particular fields. . . . Adjoining proprietors shall each make and maintain half of a divisional fence, *the middle line of which shall be on the dividing line* . . . ."[4] (Emphasis added.) The clear and unambiguous language of § 47-43 requires a divisional fence to be centered on the property line at issue. Here, it is undisputed that it is not.[5]

Our case law, although scant, has held that a fence that does not sit on the mutual boundary line is not a divisional fence. See *Grosby* v. *Harper*, 4 Conn. Cir. 196, 199, 228 A.2d 563 (hedge not divisional fence because only portion of it was centered on property line and remainder was on defendant's property; divisional fence does not "apply to such fences as may be erected by each proprietor on his own land, though near and parallel to the boundary line"), cert. denied, 154 Conn. 718, 222 A.2d 810 (1966); *Hillgen* v. *Printz-Kopelson*, Docket No. CV-96-0383208-S, 2001 WL 589106, *3 (Conn.

Super. May 11, 2001) (fence that ran only short distance along part of boundary line was not divisional fence).

Despite the plain and unambiguous language of § 47-43, the defendants nevertheless contend that the fact that the fence Tindill erected did not sit on the boundary line was not fatal to their claim that the fence was a divisional fence under § 47-43. The defendants argue that the court improperly interpreted the language of § 47-43, specifically, the language that provides that the middle line of a divisional fence "shall be on the dividing line," in that it "focused solely on that language without examining its context, either within § 47-43 or within the entirety of chapter 823 [of the General Statutes]."[6] Specifically, the defendants argue that "[t]he history and context of chapter 823 show that its intent was not to require a precise location for a divisional fence but to establish a joint duty to erect such fences, with the burdens to be equitably shared by abutting landowners." Aside from setting forth the language of other statutes pertaining to the erection or maintenance of fences, the defendants have failed to demonstrate how any of the other statutes to which they cite undermine the plain language of § 47-43. The requirements prescribed by § 47-43 governing the location and manner of erecting divisional fences do not frustrate or conflict with the goal of the statutory scheme, as argued by the defendants, to ensure that such fences are erected. More specifically, there is nothing in those other statutes that excuses noncompliance with the requirements of § 47-43 or supports the defendants' argument that a fence that is not centered on the property line and is "merely misaligned" may be considered a divisional fence. Indeed, as the defendants state in their brief to this court, "[t]he remaining provisions of . . . chapter [823] are merely supportive; they specify how the goal of erecting such a [divisional] fence may be achieved in a variety of different circumstances."[7]

The defendants further contend that, because the goal of § 47-43, and, the entirety of chapter 823, is to assure that a divisional fence will be constructed, "it makes little sense to conclude that the mere misalignment of a fence should be viewed as a trespass or should warrant a court['s] ordering its removal, especially where, as here, the 'intrusive' portion of the fence is well within the space that a properly aligned fence would have occupied on the plaintiffs' property." In asserting this argument, the defendants are referring to the portion of § 47-43 that contemplates the dimensional qualities of the various materials of which a divisional fence may be constructed. Section 47-43 provides that a divisional fence, "the middle of which shall be on the dividing line . . . shall not exceed in width, if a straight wood fence or hedge fence, two feet; if a brick or stone fence, three feet; if a crooked rail fence, six feet; and, if a ditch, eight feet, not including the bank, which shall be on the land of the maker." The

defendants rely on this language to assert that, because their fence did not exceed the width permitted by § 47-43 and did not encroach on the plaintiffs' property for more than one-half of that width, the placement of their fence on the plaintiffs' property did not constitute a trespass. The fatal flaw in the defendants' argument is that the middle of their fence did not sit on the dividing property line as required by § 47-43. To interpret § 47-43 to allow a property owner to construct a divisional fence on a neighbor's property would render the centering language of the statute superfluous.[8]

The defendants repeatedly have acknowledged that, in constructing the fences in July, 2017, Tindill set out to extend their privacy fence. The trial court found, and it is undisputed, that neither the original privacy fence nor the extended privacy fence erected by the defendants were located on the mutual boundary line. They were both located wholly within the defendants' property. The split rail fence is on the defendants' property where it meets the second installment of the defendants' privacy fence but, then, as it approaches the road, crosses the property line and encroaches on the plaintiffs' property. Because the middle of the fence does not sit on the mutual boundary line, the trial court did not err in concluding that it was not a divisional fence.

II

The defendants also contend that the trial court erred in finding Erika Tindill liable for trespass. In addressing the plaintiffs' claim against Erika Tindill, and rejecting the defendants' argument that she cannot be liable for trespass because she did not personally install or direct the installation of the fence that encroached on the plaintiffs' property, the trial court found that "the split rail fence at issue is a fixture that is appurtenant to the real estate Erika Tindill owns. Consequently, she is the owner of the fence, including those portions of the fence that trespass [on] the plaintiffs' property. As the owner of the property that continues to be a trespass on the plaintiffs' property, she, too, is liable to the plaintiffs for the trespass." The defendants argue on appeal that "[t]he issue of 'trespass by ownership of a fixture' was not properly raised or briefed and should have been deemed abandoned."[9] Because the defendants failed to present this argument to the trial court, which, in turn, did not address it, it was not properly preserved for our review.

"We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . [T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.)

*Noonan* v. *Noonan*, 122 Conn. App. 184, 190, 998 A.2d 231, cert. denied, 298 Conn. 928, 5 A.3d 490 (2010). It is a well settled principle that "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted . . . but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021).

In their memorandum of law in support of their objection to the plaintiffs' motion for summary judgment, the defendants argued that the plaintiffs "have offered no proof whatsoever that Erika Tindill approved, consented to, or otherwise had any influence whatsoever over [Tindill's] actions" and, thus, "cannot claim that . . . Tindill was acting as [Erika] Tindill's agent," and "[t]hat is . . . the sole allegation they made against [Erika] Tindill in their complaint." The defendants further argued: "Apparently recognizing their failure in this regard, the plaintiffs have attempted to shift their legal theory, claiming that [Erika] Tindill is somehow liable as the owner of a 'fixture' that is partially located on her property. Unsurprisingly, they have not cited a single precedent to back up this frivolous—and previously unpleaded—argument."[10] The defendants then argued that a trespass must be intentional and that, "even if . . . Tindill could reasonably be said to have 'trespassed' by constructing a split rail fence partially on [the] plaintiffs' side of the mutual boundary, but well within the parameters allowed by . . . § 47-43, there can be no claim against [Erika] Tindill absent evidence of her intent." (Emphasis omitted.)

The defendants now contend on appeal that, because the plaintiffs failed to assert this theory of "trespass by ownership of a fixture" in their complaint, the trial court erred in finding Erika Tindill liable on that basis. Although the defendants mentioned that this theory of liability was "previously unpleaded" by the plaintiffs and that the sole allegation against Erika Tindill was based on an allegation that she acted through Tindill, they did not distinctly argue to the trial court that it could not find Erika Tindill liable on this basis because the plaintiffs failed to plead it in their complaint. The defendants, likewise, provided no legal authority or analysis, pertaining to the interpretation or sufficiency of pleadings, to the trial court for its consideration of this contention. Consequently, the trial court did not address any alleged inadequacies in the plaintiffs' complaint.

The defendants also claim that "[t]he plaintiffs' failure to support [their] new theory with any authority should also have foreclosed any review by the trial court." The defendants did not argue, as they do now, that the trial

court was precluded from reviewing the plaintiffs' claim because the plaintiffs had failed to provide any legal authority in support of it. Although the defendants argued, in a single sentence, that the plaintiffs had not cited any legal authority to support their claims against Erika Tindill, they did not argue that the plaintiffs' failure to do so precluded the trial court from reviewing the claim, nor did they cite any legal authority themselves in support of this notion.

In sum, in opposing summary judgment as to the plaintiffs' claim that Erika Tindill was liable for trespass because she owned the property to which the fence that encroached on the plaintiffs' property was an appurtenant fixture, the defendants set forth two paragraphs of argument, which was devoid of analysis or legal authority that is relevant to the bases on which the defendants now challenge the judgment of the trial court as to Erika Tindill. Accordingly, because the defendants did not properly raise these arguments to the trial court, we decline to review them.[11]

### III

The defendants also claim that the trial court erred in finding Tindill liable, and awarding the plaintiffs monetary damages, for conversion. They contend that the court erred in finding Tindill liable for conversion because the plaintiffs never pleaded conversion in their complaint or briefed it in their motion for summary judgment. We agree.

In their complaint, the plaintiffs alleged: "On or about July 9, 2017 . . . Tindill destroyed a chain-link fence along a portion of the boundary between the premises known as 113 Glen View Terrace and the premises known as 119 Glen View Terrace, New Haven, Connecticut. . . . Tindill constructed a new, approximately six foot high wooden stockade fence in place of [the] plaintiff[s'] chain-link fence that had been in place for more than a decade." The plaintiffs further alleged that Tindill "destroyed property of [the] plaintiffs, i.e., the chain-link fence."

In addressing the plaintiffs' claim regarding the chain-link fence, the trial court first noted that it was undisputed that Tindill removed the end corner post and top supporting metal rod of the chain-link fence and that both parties considered the chain-link fence to be on or near the mutual boundary line of their properties. The court determined that, "[b]ecause the chain-link fence is located on the mutual boundary line of the parties' properties, the chain-link fence is an appurtenant fixture attached to both properties. Thus, the owners of the adjoining lots are joint owners of the fence located on the mutual boundary line, and each had an ownership interest in the parts that Tindill removed." The court reasoned: "It is undisputed that the plaintiffs never gave permission to, or authorized, Tindill to

remove the fence post and top rod. There is no evidence to establish that the removed fence parts have been reinstalled or replaced. As stated [previously], the plaintiffs had an ownership interest in the subject fence parts. Because Tindill has deprived the plaintiffs of their ownership interest in those fence parts by removing them without permission, he is liable to the plaintiffs for those fence parts." On that basis, the court found Tindill liable for conversion.

The defendants claim on appeal that the trial court erred in finding Tindill liable for conversion because the plaintiffs did not allege conversion in their complaint. "The tort of [c]onversion occurs when one, *without authorization*, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Emphasis in original; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *ComTronics, Inc.*, 255 Conn. 20, 43–44, 761 A.2d 1268 (2000). "To establish a prima facie case of conversion, the plaintiff had to demonstrate that (1) the material at issue belonged to the plaintiff, (2) that the defendants deprived the plaintiff of that material for an indefinite period of time, (3) that the defendants' conduct was unauthorized and (4) that the defendants' conduct harmed the plaintiff." *Stewart* v. *King*, 121 Conn. App. 64, 74 n.4, 994 A.2d 308 (2010).

The plaintiffs contend that, although they did not expressly plead conversion in their complaint, the allegations contained therein may be liberally construed as sounding in conversion. "[T]he interpretation of pleadings is always a question of law for the court. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002).

Here, although the plaintiffs alleged that Tindill destroyed their property when he dismantled portions of the chain-link fence, the plaintiffs' complaint alleges that Tindill's conduct constituted a trespass and sought damages only for trespass. At no time, either in their complaint or motion for summary judgment, did the plaintiffs allege that Tindill's conduct constituted conversion. In fact, in their memorandum of law in support of their motion for summary judgment, the plaintiffs

argued that Tindill "committed a trespass" when he removed portions of the chain-link fence. Because the plaintiffs' claim pertaining to the chain-link fence was limited to an alleged trespass by Tindill, the defendants were never given notice of or afforded an opportunity to defend a claim of conversion.[12] Accordingly, the trial court's judgment finding Tindill liable for conversion cannot stand.

The judgment is reversed with respect to the determination that William Tindill is liable for conversion and the case is remanded with direction to vacate that finding; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Despite this allegation, the defendants did not actually file a counterclaim alleging nuisance.

[2] In their memorandum of law in support of their objection to the plaintiffs' motion for summary judgment, the defendants stated: "For the purposes of this case, the defendants are not contesting the accuracy of the plaintiffs' survey. That survey shows that the fences constructed by . . . Tindill lie along or within inches of the mutual property boundary."

[3] The defendants also claim that the trial court erred in finding that "the defendants' fence(s) cannot qualify as a divisional fence because a split rail fence is not one of the types of 'city' fences listed in [§ 47-43]." In light of our conclusion that the court correctly determined that the defendants' fence was not a divisional fence because it did not sit on the center of the mutual boundary line, we need not address this claim.

[4] Section 47-43 also describes the types of fences that constitute divisional fences: "Within cities and adjacent to house lots, a tight board fence four and one-half feet high, an open picket fence four feet high, the opening between pickets not to exceed four inches, or a slat rail fence four feet high, the opening between slats not to exceed six inches, the lower slat not over six inches from the ground, a fence not less than four feet high of chain link galvanized wire not smaller than number nine gauge supported upon galvanized tubular steel posts set in concrete, all end and corner posts to be suitably braced, and all to be substantially erected, or any other fence which in the judgment of the selectmen or other officials charged with the duty of fence viewers is equal thereto, shall be a sufficient fence; in places outside of incorporated cities, a rail fence four and one-half feet high, a stone wall four feet high, suitably erected, a wire fence consisting of four strands not more than twelve inches apart, stretched tightly, the lower strand not more than twelve inches and the upper strand not less than four feet from the ground, with good substantial posts not more than sixteen feet apart, and any other fence which in the judgment of the selectmen is equal to such a rail fence, shall be a sufficient fence." General Statutes § 47-43.

[5] In paragraph 11 of Phipps' affidavit, he indicated that "[t]he 3.5 foot wood rail fence encroaches on the [plaintiffs'] property." In paragraph 13, Phipps indicated that "[t]he center of the 3.5 foot wood rail fence is not on the mutual boundary line for the entirety, or even the majority, of its length." As the plaintiffs correctly describe, the fence here at issue does not sit on the center of the mutual boundary line; it is a "diagonal fence that intersects with the boundary line."

[6] Chapter 823 of the General Statutes is titled: "Fences."

[7] Moreover, the defendants' argument is belied by the plain and unambiguous language of § 47-43. Although we read each statute in the context of the entirety of the statutory scheme, it is not the prerogative of this court to ignore the plain language set forth in the statute.

[8] The defendants also argue that the plaintiffs failed to establish a prima facie claim of trespass because they failed to prove that the trespass was intentional or that it caused direct injury. Because these arguments were neither raised before the trial court; see *Guiliano* v. *Jefferson Radiology, P.C.*, 206 Conn. App. 603, 622,      A.3d      (2021); nor briefed beyond a mere mention in the defendants' brief to this court; see *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016); we decline to review them.

The defendants additionally contend that, because § 47-43 provides for various permissible intrusions on each property owner's land, the court erred in finding a trespass because the plaintiffs did not have exclusive

possession of the land on which the fence was placed. As explained herein, the plain language of § 47-43 requires a divisional fence to be centered on the boundary line of the properties at issue, and the language of the statute that pertains to the overhang of the fence contemplates the varying dimensional widths, which are based on the materials used to construct the fence. That language does not allow, as the defendants argue, a divisional fence to be constructed exclusively on one of the properties that it is purporting to divide. There is nothing in the language of the statute that supports the defendants' argument that § 47-43 divests a property owner of the exclusive ownership of his or her land, and the defendants have provided no legal support for this argument.

[9] The defendants also claim that, "[e]ven if the issue of 'trespass by ownership of a fixture' had been properly raised, the trial court's decision was erroneous as a matter of law." In so arguing, the defendants appear to assert that, once the fence was erected by Tindill on the plaintiffs' property, the fence belonged to the plaintiffs and, therefore, could not have constituted a trespass by the defendants. We decline to address this baseless claim.

[10] In their complaint, the plaintiffs alleged that Erika Tindill is the owner of the property at which she resides with Tindill. The plaintiffs further alleged that, "acting through . . . Tindill, [she] caused the fence to be built such that it encroaches on the land of [the] plaintiffs and is claiming for a boundary line a line that is not the true line." In their memorandum of law in support of their motion for summary judgment, the plaintiffs argued as to Erika Tindill: "Fences are fixtures: Our Supreme Court has long held that fences are fixtures to real property. . . . Erika Tindill is the record owner of the [defendants'] property, of which the fences are fixtures." (Citations omitted.) On that basis, the plaintiffs argued: "Even if the defendants will not admit that . . . Erika Tindill allowed or permitted the actions [that] . . . Tindill claims to have individually taken, she cannot escape the reality that a fixture on her property (split rail fence) encroaches on [the plaintiffs'] property. It does not matter if . . . Erika Tindill took any action to construct the fences herself. She owns and possesses the [defendants'] property, and a fixture on her property encroaches on the [plaintiffs'] property."

[11] Moreover, this court has observed that, "[w]hile the lack of an appropriate pleading cannot be ignored, neither can it be ignored that there is no element of surprise to the defendant—at all times, the defendant has been on notice that this was an issue in the case, even if not properly pleaded . . . ." (Internal quotation marks omitted.) *Manzo-Ill* v. *Schoonmaker*, 188 Conn. App. 343, 349 n.7, 204 A.3d 1207, cert. denied, 331 Conn. 925, 207 A.3d 27 (2019). Here, the defendants had adequate notice of the plaintiffs' theory of liability as to Erika Tindill and were afforded ample opportunity to address it.

[12] We note the contrast between the conversion claim, which was mentioned for the first time in the trial court's memorandum of decision, and the claim that Erika Tindill was liable for trespass by virtue of her status as the owner of the property to which the fence was an appurtenant fixture, which was briefed and argued by the parties during the summary judgment proceedings.

———————————————