******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CONNEX CREDIT UNION *v.* MICHELLE
M. THIBODEAU
(AC 43830)

Alvord, Cradle and DiPentima, Js.

*Syllabus*

The plaintiff, a secured party, sought to recover monetary damages from
the defendant debtor, for breach of a retail installment sales contract,
secured by an interest in the defendant's vehicle. After the defendant
defaulted, the plaintiff took possession of the vehicle and sent the defen-
dant a presale notice regarding her right to redeem and the notice of
sale. The defendant took no steps to redeem the vehicle, and the plaintiff
sold it in an arm's-length transaction. Following the sale, the plaintiff sent
the defendant a postsale notice advising her of the sale and informing
her that the sale price was less than the amount that she owed and that
the plaintiff may seek a deficiency judgment. The defendant did not pay
the amount allegedly due. Following a bench trial, the trial court ren-
dered judgment for the plaintiff and awarded certain damages, and the
defendant appealed to this court. *Held*:

1. The trial court did not err in determining that the plaintiff properly
provided notice of the right to an accounting as required by article 9
of the Uniform Commercial Code (UCC), as the provision of an actual
accounting in lieu of a statement of a right to an accounting was enough
to satisfy the requirements set out by the applicable statute (§ 42a-9-
613 (1) (D)): although the statute only requires a statement that the
debtor is entitled to an accounting, additional information is permitted
and exact language is not required, and providing an actual accounting
in the notice is the type of additional information that the statute allows;
moreover, providing the actual accounting, especially when provided
free of charge, served as a consumer focused means of meeting the
statutory purpose of notification to the debtor; accordingly, the plaintiff's
presale notice, which provided detailed information, including details
of the defendant's debt and the amount she owed to the plaintiff, and
actively invited questions, adhered to the requirements of the UCC and
thus satisfied the accounting provision of the statute.

2. This court declined to reach the merits of the defendant's claim that the
trial court erred in determining that the plaintiff properly provided a
telephone number from which the defendant could learn the full amount
she would need to pay in order to redeem her vehicle as required by
article 9 of the UCC, the claim not having been properly preserved for
appellate review; the defendant did not raise this issue until her posttrial
brief, and this court's careful review of the record revealed the issue
was not raised at trial and was not addressed in the court's memorandum
of decision, of which no further articulation was sought, and, because
the court did not consider the issue, the factual record was wholly
inadequate for review.

3. The trial court did not err in determining that the plaintiff satisfied the
requirements of the Retail Installment Sales Financing Act (RISFA)
(§ 36a-770 et seq.) regarding the repossession and sale of a motor vehicle.
a. The defendant's claim that the postsale notice failed to provide a
proper itemization as required by statute (§ 36a-785 (e)) was not properly
preserved for appellate review, the defendant having failed to raise this
issue until her posttrial brief, and the record was unclear how, if at all,
the issue was raised at trial since the issue was not addressed in the
court's memorandum of decision.
b. The plaintiff did not violate § 36a-785 (g) when it credited the defendant
with the actual sale price of the vehicle, an amount lower than the
statutory fair market value as determined by the formula in § 36a-785
(g); the purpose of § 36a-785 (g) is not to calculate an amount that a
creditor must credit to a debtor's account but, rather, to provide the
debtor with the tools to defend herself in a deficiency proceeding brought
by a secured party, and, where a secured party seeks a deficiency judg-
ment following a calculation pursuant to subsection (g) of the statute,
the secured party may rebut the presumed value of the vehicle with direct

in-court testimony, which the plaintiff did here, presenting testimony regarding how the sale price represented the actual fair market value of the vehicle due to damage sustained in an accident that prompted the defendant's surrender of the vehicle, and, additionally, the defendant did not offer any evidence as to the vehicle's value.

Argued September 16—officially released November 30, 2021

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Aurigemma, J.*; subsequently, the defendant withdrew the counterclaim; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Garrett A. Denniston*, with whom, on the brief, was *Marisa A. Bellair*, for the appellant (defendant).

*Robert C. Lubus, Jr.*, with whom were *Andrew S. Marcucci*, and, on the brief, *Stephanie Ann Palmer*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. This appeal concerns the application of the statutory schemes that govern a secured party's repossession and subsequent sale of a motor vehicle in a consumer goods secured transaction. Connecticut has adopted article 9 of the Uniform Commercial Code (UCC), codified at General Statutes § 42a-9-101 et seq., which governs secured transactions. Specifically at issue here is the section that governs a secured party's notification to a debtor regarding the repossession and impending sale of collateral. Connecticut also has enacted the Retail Installment Sales Financing Act (RISFA), General Statutes § 36a-770 et seq., an act that governs installment sales contracts—a specific type of secured transaction. Specifically at issue here is the section that pertains to a secured party's notification to a debtor regarding the proceeds of the sale of a repossessed and sold motor vehicle. The underlying lawsuit arose from the defendant debtor's default on her car payments and the plaintiff secured party's subsequent repossession and sale of that vehicle. In essence, we are tasked with answering two questions: (1) what must a secured party tell a debtor *prior to* the sale of repossessed collateral and (2) what must a secured party do *after* the sale of a repossessed vehicle.

The defendant debtor, Michelle M. Thibodeau, appeals from the judgment of the trial court rendered in favor of the plaintiff secured party, Connex Credit Union, in this breach of contract action. On appeal, the defendant claims that the trial court erred in determining that the plaintiff (1) provided notice of the right to an accounting as required by article 9 of the UCC, (2) provided a telephone number from which the defendant could learn the full amount she would need to pay in order to redeem her vehicle as required by article 9 of the UCC,[1] and (3) satisfied the requirements of RISFA regarding the repossession and sale of a motor vehicle. On the basis of these claims, the defendant argues that the plaintiff was precluded from recovering any deficiency upon resale due to its alleged failure to adhere to the statutory requirements.[2] We affirm the judgment of the trial court.

The following facts, as found by the trial court in its memorandum of decision, and procedural history are relevant to our discussion of the claims on appeal. "On April 7, 2014, the defendant . . . borrowed $19,993.12 [from the plaintiff] to be repaid with interest at 4.99 percent per annum over seventy-two months. The retail installment sales contract . . . signed by the defendant was secured by a security interest in the defendant's 2013 Kia Rio [vehicle] . . . . In the [c]ontract the defendant agreed to be responsible for repossession and sales costs as well as attorney's fees."

After her October 23, 2017 payment, the defendant

made no further payments on the loan, and the trial court determined that, as a result, she had defaulted. The defendant "contacted the plaintiff on or about January 16, 2018, and advised it that her vehicle had been in an accident and she wished the plaintiff to come and take possession of the vehicle."

On January 17, 2018, the plaintiff sent a document titled "Right to Redeem and Notice of Sale" (presale notice) to the defendant via certified mail. This document noted the repossession date, advised the defendant of her right to redeem her vehicle, explained how to redeem the vehicle, and listed the details of the defendant's outstanding debt.[3] The defendant took no steps to redeem the vehicle.

On February 28, 2018, the plaintiff sold the vehicle in an arm's-length transaction for $4000. On March 20, 2018, the plaintiff sent the defendant a letter (postsale notice) advising her of the sale and informing her that the sale price was less than the amount that she owed. The postsale notice also informed the defendant that the plaintiff might seek a deficiency judgment against her. A named employee, identified as a collections specialist, signed the postsale notice which included the plaintiff's mailing address, website address, and phone number, and closed with the words "[i]f you have any questions, please call." The defendant did not contact the plaintiff with any questions.

In addition to the defendant's outstanding debt, the plaintiff incurred $760 in repossession and sales costs. Along with the sale proceeds, the plaintiff recovered a total of $1955.99 from the insurance it had on the vehicle. The plaintiff also applied $9 from a savings account that the defendant had with the plaintiff to the defendant's outstanding debt.

On August 30, 2018, the plaintiff commenced this action against the defendant for breach of contract. The plaintiff sought principal damages of $4495.07, prejudgment interest in the amount of $263.22, and attorney's fees in the amount of $674. In response, the defendant asserted several special defenses, including assertions that the plaintiff had failed to inform her in its presale notice that she was entitled to an accounting and had not credited her with the correct value upon selling the vehicle.[4]

The case was tried to the court, *Aurigemma, J.*, on September 11, 2019. At trial, the plaintiff called J. R. Roy, the plaintiff's collection manager. Roy testified as to the vehicle's condition and value. The defendant did not present evidence on the value of the vehicle and presented no witnesses and no exhibits. The parties submitted simultaneous posttrial briefs.

On January 2, 2020, the court issued its memorandum of decision, in which it found that "the plaintiff [had] proved all the necessary elements of its cause of action."

In addition, the court rejected each of the defendant's special defenses. The court rendered judgment for the plaintiff and awarded damages in the amount of $5432.29. This appeal followed. Additional facts will be set forward as necessary.

I

The defendant first claims that the court erred because "(1) it ignored the plain language of [General Statutes §§ 42a-9-614 (1) (A) and 42a-9-613 (1) (D)] by excusing [the plaintiff's] omission of language stating [that the defendant] had the right to request a written explanation of indebtedness and the cost for doing so (if any); and (2) what the court called an 'accounting' in the presale notice falls well short of what the [Connecticut] UCC requires." We disagree.

We first set forth the appropriate standard of review. Here, the financial amounts listed in the notices are not in dispute; in resolving the defendant's various claims, we are only tasked with determining what the relevant statutes require of secured parties. Thus, our consideration of this appeal requires only a review of the trial court's application of the law to the undisputed facts. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, [t]he legislature is always presumed to have created a harmonious and consistent body of law . . . [so that] [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . Because issues of statutory construction raise questions of law, they are subject to plenary review on appeal." (Internal quotation marks omitted.) *Robinson* v. *Tindill*, 208 Conn. App. 255, 264, A.3d (2021).

The first issue we address is the question of what information a secured party must include in a notice to a debtor *prior to* disposing of repossessed consumer goods collateral. In consumer goods secured transactions,[5] a notification of disposition of collateral requires a statement "that the debtor is entitled to an accounting

of the unpaid indebtedness and [a statement of] the charge, if any, for an accounting . . . ." General Statutes § 42a-9-613 (1) (D); see also General Statutes § 42a-9-614 (1) (A). The parties agree that the notice in question did not include language expressly stating that the defendant was "entitled to an accounting . . . ." General Statutes § 42a-9-613 (1) (D). They disagree, however, as to whether the plaintiff's notification conforms to the statute's requirement despite the lack of the specific statement.

The defendant argues that a secured party cannot merely adhere to the "spirit" of §§ 42a-9-613 (1) (D) and 42a-9-614 (1) (A), but rather it must strictly comply with the requirements set out in the statute. The plaintiff responds that its notice "exceeded the minimum necessary contents to satisfy the statute by providing the actual accounting free of charge, rather than the right to request an accounting and the cost for the fulfillment of that request, if any." On the particular facts of this case, we conclude that the plaintiff did not violate the requirements of the statute.

We begin by setting forth the relevant provisions of § 42a-9-614, which governs the contents and form of notification required before disposing of collateral in consumer goods transactions, and § 42a-9-613,[6] which, although it governs the contents and form of notification required before disposition of collateral in *nonconsumer goods transactions*, is incorporated in part into § 42a-9-614. Section 42a-9-614 provides that, "[i]n a consumer-goods transaction, the following rules apply . . . ."[7] Subsection (1) governs the information that must be provided in a notification of disposition. Specifically, a notification of disposition must provide four categories of information, only one of which is relevant to this discussion.[8] See General Statutes § 42a-9-614 (1). The relevant and first required category of information is "[t]he information specified in subdivision (1) of section 42a-9-613 . . . ." General Statutes § 42a-9-614 (1) (a). Section 42a-9-613 (1) (D) is the provision at issue and requires that a notification of disposition contain a statement that "the debtor is entitled to an accounting of the unpaid indebtedness" along with "the charge, if any, for an accounting . . . ." The other three categories of required information in disposing of consumer goods collateral, listed in § 42a-9-614 (1), are not relevant to this discussion.

Section 42a-9-614 (2) further provides that "[a] particular phrasing of the notification is not required." Lastly, although § 42a-9-614 (3) provides an example of a sufficient notification,[9] § 42a-9-614 (4) provides that "even if additional information appears at the end of the form," the notice remains sufficient.

We begin our analysis by noting that the question of whether providing an actual accounting in lieu of a statement of a right to an accounting satisfies the

requirements set out in § 42a-9-613 (1) (D) is a matter of first impression in Connecticut. Although the statute only requires a statement "that the debtor is entitled to an accounting"; General Statutes § 42a-9-613 (1) (D); including additional information is permitted; see General Statutes § 42a-9-614 (4); and exact language is not required. General Statutes § 42a-9-614 (2). Providing an actual accounting in the notice instead of a statement that such an accounting may be obtained on request is the type of additional information that the statute allows. Indeed, providing the actual accounting, especially when provided free of charge as was done here, instead of a notice of a right to an accounting serves as a consumer focused means of meeting the statutory purpose of notification to the debtor.

An accounting is defined, inter alia, as "the aggregate unpaid secured obligations" and identifies "the components of the obligations in reasonable detail." General Statutes § 42a-9-102 (4) (B) and (C). In the present case, the presale notice stated the principal ($9700.06), the interest ($114.05 with a $1.33 per diem accrual), late fees ($30), and cost of towing ($200), for a total outstanding balance of $10,044.11. The notice also closed with "[i]f you have any questions, please contact me," and provided a phone number and address. In addition, the notice provided a three page long description of the defendant's redemption rights and outstanding debt. The plaintiff provided an actual accounting in compliance with the statute, comprised of "the principal, interest, per diem, late fees, [and] repossession costs . . . ." See General Statutes § 42a-9-102 (4).

On these facts, we conclude that the plaintiff's presale notice, which provided detailed information, including details of the defendant's debt and the amount she owed to the plaintiff, and actively invited questions, adhered to the requirements of §§ 42a-9-614 (1) (A) and 42a-9-613 (1) (D) and thus satisfied the accounting provision of the statute.

II

The defendant's second claim is that the court erred in finding that the plaintiff provided a telephone number that she could call to determine the total amount that she would need to pay to redeem the vehicle as required by § 42a-9-614 (1) (C).[10] Because this claim is not properly preserved for appellate review, we decline to reach the merits of this argument.

The following facts are relevant to our resolution of this claim. The defendant asserted several special defenses relating to the sufficiency of the plaintiff's presale notice and postsale notice in her amended answer. Although the defendant raised other defenses based upon §§ 42a-9-613 and 42a-9-614, she did not assert the defense that the plaintiff failed to provide a number that she could call in order to learn the total

amount she would need to pay to redeem her vehicle.[11] See footnote 4 of this opinion. The defendant did not raise this issue until her posttrial brief, which was filed simultaneously with the plaintiff's brief. Further, our careful review of the record reveals that this issue was not raised at trial and is not addressed in the trial court's memorandum of decision, of which no further articulation was sought.

Because the trial court did not consider this issue, the factual record is wholly inadequate for our review. The court did not make findings of fact relevant to this specific issue. Therefore, in asking us to review this claim, the defendant is essentially asking us to make factual findings—a request with which we cannot comply. See *Byrne* v. *Spurling*, 105 Conn. App. 99, 103, 937 A.2d 70 (2007). "[A]n examination of the plaintiff's belated arguments demonstrates the need for factual findings that the record does not contain." Id. For these reasons, we cannot address the merits of this claim.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. "[T]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial— after it is too late for the trial court *or the opposing party* to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . [T]o permit the appellant first to raise posttrial an issue that arose during the course of the trial would circumvent the policy underlying the requirement of timely preservation of issues." (Emphasis in original; internal quotation marks omitted.) *Carroll* v. *Yankwitt*, 203 Conn. App. 449, 479 n.23, 250 A.3d 696 (2021). This court previously has declined to review a claim raised for the first time in a posttrial brief because doing so would "contravene the purpose of the preservation requirement," noting that it was "not surprising that the trial court did not address the defendant's [claim] in any manner in its memorandum of decision." *AS Peleus, LLC* v. *Success, Inc.*, 162 Conn. App. 750, 759–60, 133 A.3d 503 (2016). Thus, because the issue was only raised in the defendant's posttrial brief and because the record is inadequate for review, we do not reach the merits of this claim.

### III

Finally, the defendant claims that the trial court erred by "implicitly" finding that the plaintiff complied with RISFA, specifically, General Statutes § 36a-785 (e), and provided the defendant with a " 'written statement itemizing the disposition of the proceeds' " from the vehicle's sale. In addressing this claim, we move away from the adequacy of the presale notice and examine the defendant's actions *after* the vehicle was sold. The defendant further argues that, even if the plaintiff had satisfied § 36a-785 (e), the court erred in finding that

the plaintiff credited the defendant the proper amount from the sale of the vehicle. As to the claim that the plaintiff failed to provide an itemization in the postsale notice, the defendant's argument was not properly preserved, and, therefore, we do not reach the merits of the claim. As to the argument that the plaintiff failed to credit the defendant with the proper amount, we disagree.

## A

Similar to the defendant's claim detailed in part II of this opinion, the defendant's claim that the postsale notice failed to provide a proper itemization as required by § 36a-785 (e)[12] is not properly preserved for appellate review.

Although the defendant raised other defenses based on § 36a-785 in her amended answer, she did not assert the defense of failing to provide a statement itemizing the proceeds of the disposition. See footnote 4 of this opinion. The defendant did not raise the issue until her posttrial brief—filed simultaneously with the plaintiff's posttrial brief. Again, the record is unclear how, if at all, this issue was raised at trial since the issue is not addressed in the trial court's memorandum of decision.[13] The defendant herself acknowledges that "neither [the plaintiff] nor the trial court addressed the postsale RISFA argument . . . ." Perhaps neither addressed this argument because each was mindful of the precept that raising an issue only in a posttrial brief "circumvent[s] the policy underlying the requirement of timely preservation of issues." (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 479 n.23.

Although each party briefed this issue on appeal, we decline to review the claim as it was neither properly raised nor considered at trial. Therefore, because permitting this claim " 'would encourage trial by ambuscade' " and would " 'contravene the purpose of the preservation requirement,' "; id.; we conclude that the defendant has failed to properly preserve the claim for appellate review. See *AS Peleus, LLC* v. *Success, Inc.*, supra, 162 Conn. App. 759–60.

## B

In addition to the claim that the plaintiff provided no itemized statement of disposition, the defendant claims that, even if there were such a statement, the plaintiff necessarily violated the statute's mandate by crediting her with the incorrect value of the vehicle.[14] Specifically, the defendant claims that § 36a-785 (g) requires a secured party to credit a debtor with the fair market value as determined by the formula set forth in the statute (statutory fair market value) at the time the collateral is disposed of and that the trial court erred in concluding that the postsale notice properly credited her with $4000 in actual sales proceeds rather than the

statutory fair market value as required under § 36a-785 (g). We disagree.

For the same reasons set forth in part I of this opinion, this claim is subject to plenary review. See *Wells Fargo Bank, N.A.* v. *Fratarcangeli*, 192 Conn. App. 159, 165, 217 A.3d 649 (2019).

The following facts are relevant to our resolution of this claim. At trial, the plaintiff called its collection manager, Roy, as a witness. Roy testified that the statutory fair market value of the vehicle was $6225. He also testified, however, that, according to the vehicle condition report, the vehicle's driver side front door and rear quarter panel as well as the passenger side front quarter panel, rear door, and rear quarter panel all were scratched and dinged. According to Roy, the sale price of $4000—not the statutory fair market value of $6225—represented the vehicle's actual fair market value. The defendant did not present any evidence regarding the vehicle's value. The trial court found that the plaintiff rebutted the fair market value presumption of § 36a-785 (g), and found that the sale price ($4000) was the vehicle's actual fair market value.

Section 36a-785 (g), titled "Fair market value," provides in relevant part: "If the goods retaken consist of a motor vehicle the aggregate cash price of which was more than four thousand dollars, the prima facie fair market value of such motor vehicle shall be calculated by adding together the average trade-in value for such motor vehicle and the highest-stated retail value for such motor vehicle and dividing the sum of such values by two. Such average trade-in value and highest-stated retail value shall be determined by the values as stated in the National Automobile Dealers Association Used Car Guide [(NADA)] . . . as of the date of repossession. . . . The prima facie evidence of fair market value of such motor vehicle . . . so determined may be rebutted only by direct in-court testimony. If such value of the motor vehicle . . . is less than the balance due under the contract . . . the holder of the contract may recover from the retail buyer . . . the amount by which such liability exceeds such fair market value . . . ." In essence, the statute creates a rebuttable presumption that the NADA value, the statutory fair market value, is the actual fair market value.

On appeal, the defendant claims that the plaintiff was required to credit her account with the statutory fair market value rather than the actual sale proceeds and was precluded from contesting the statutory fair market value until the matter was before a court. It is the defendant's position that the plaintiff is barred from recovering a deficiency judgment in this case because of its failure to credit her with the statutory fair market value when it sold the vehicle. The plaintiff essentially relies on the fact that the trial court found that Roy's testimony rebutted the presumption of fair market value

in arguing that it complied with the statute.

We disagree with the defendant's interpretation of § 36a-785 (g). The purpose of subsection (g) is not to calculate an amount that a creditor/secured party *must* credit to a debtor's account, but rather to provide the debtor with the tools to defend herself in a deficiency proceeding brought by a secured party. See General Statutes § 36a-785 (g). Where a secured party seeks a deficiency judgment, following a calculation pursuant to subsection (g), the secured party may rebut the presumed value of the vehicle with direct in-court testimony. See General Statutes § 36a-785 (g). In the present case, the plaintiff presented evidence of the statutory fair market value ($6225) and then rebutted the presumed value with Roy's testimony on the vehicle's sale price ($4000) and how that value represented the actual fair market value of the vehicle due to damage sustained in the accident that prompted the defendant's surrender of the vehicle. Finally, although the plaintiff presented ample evidence to rebut the statutory fair market value, the defendant did not offer any evidence as to the vehicle's value. We conclude that the plaintiff did not violate § 36a-785 (g).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Despite the phrasing of this claim, we note that the trial court made no such determination.

[2] Because we find that the plaintiff did not violate these statutes, we need not address the effects of such violations.

[3] "The document indicated that the repossession date was [January 16, 2018] and advised the defendant that she could 'still redeem (get back) [her] vehicle by curing [her] default.' It further advised that the defendant needed to pay $985.48 to the Credit Union for principal, interest and late fees and $200 to the Repossession agent 'on or before the REDEMPTION DATE,' which the document listed as [February 5, 2018]."

[4] In toto, the defendant asserted six special defenses. Specifically, she argued: (1) the plaintiff did not credit her with the fair market value of the vehicle, in violation of General Statutes § 36a-785 (g); (2) the plaintiff did not provide written notice explaining that she was responsible for retrieving personal property from the vehicle, in violation of § 36a-785 (c) (2); (3) the plaintiff failed to inform her that she was entitled to an accounting, in violation of General Statutes §§ 42a-9-613 (1) (D) and 42a-9-614; (4) the plaintiff failed to provide an accurate description of her liability for deficiency, in violation of § 42a-9-614 (1) (B); (5) the plaintiff's sale restricted her right to redeem under General Statutes § 42a-9-623 by requiring payment by cash or bank teller's check; and (6) the plaintiff misrepresented her right to redeem, in violation of § 42a-9-614 (5).

In addition, the defendant brought a counterclaim alleging violations of various consumer protection statutes. At trial, however, the defendant withdrew her counterclaim.

[5] "'Consumer goods' means goods that are used or bought for use primarily for personal, family or household purposes." General Statutes § 42a-9-102 (23).

[6] General Statutes § 42a-9-613 provides in relevant part: "Except in a consumer-goods transaction, the following rules apply: (1) The contents of a notification of disposition are sufficient if the notification: (A) Describes the debtor and the secured party; (B) Describes the collateral that is the subject of the intended disposition; (C) States the method of intended disposition; (D) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and (E) States the time and place of a public disposition or the time after which any other disposition is to be made. . . ."

[7] The requirements differ depending upon whether the transaction is a

consumer goods transaction or not. See General Statutes §§ 42a-9-613 and 42a-9-614.

[8] General Statutes § 42a-9-614 (1) provides: "A notification of disposition must provide the following information: (A) The information specified in subdivision (1) of section 42a-9-613; (B) A description of any liability for a deficiency of the person to which the notification is sent; (C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 42a-9-623 is available; and (D) A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available."

[9] General Statutes § 42a-9-614 (3) provides: "The following form of notification, when completed, provides sufficient information:

"(Name and address of secured party.)

"(Date)

NOTICE OF OUR PLAN TO SELL PROPERTY

" …. (Name and address of any obligor who is also a debtor.)

"Subject: …. (Identification of transaction)

"We have your …. (describe collateral), because you broke promises in our agreement.

"(For a public disposition:)

"We will sell …. (describe collateral) at public sale. A sale could include a lease or license. The sale will be held as follows:

"Date: ….

"Time: ….

"Place: ….

"You may attend the sale and bring bidders if you want.

"(For a private disposition:)

"We will sell …. (describe collateral) at private sale sometime after …. (date). A sale could include a lease or license.

"The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you (will or will not, as applicable) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

"You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at …. (telephone number).

"If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at …. (telephone number) or write us at …. (secured party's address) and request a written explanation. (We will charge you $…. for the explanation if we sent you another written explanation of the amount you owe us within the last six months.)

"If you need more information about the sale call us at …. (telephone number) or write us at …. (secured party's address).

"We are sending this notice to the following other people who have an interest in …. (describe collateral) or who owe money under your agreement:

"…. (Names of all other debtors and obligors, if any.)"

[10] General Statutes § 42a-9-614 (1) provides that "[a] notification of disposition must provide the following information . . . ." Subdivision (C) requires that such notice include "[a] telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 42a-9-623 is available . . . ." General Statutes § 42a-9-614 (1) (C).

[11] The presale notice provides, beneath the list of money past due and repossession costs: "In addition to the charges listed above, you will incur storage fees. Please contact the [r]epossession agent to determine the amount of the charge." The defendant argues that because the presale notice only provided contact information for the credit union and not for the repossession agent, the defendant was not provided with a number with which she could learn the amount she needed to pay to redeem the vehicle.

[12] General Statutes § 36a-785 (e), titled "Proceeds of resale," provides in relevant part: "Not later than thirty days after the resale, the holder of the contract shall give the retail buyer a written statement itemizing the disposition of the proceeds. . . ."

[13] After filing the present appeal, the defendant filed a motion for articulation with the trial court on February 27, 2020. Specifically, the defendant requested articulation of the trial court's "basis for rejecting [the defendant's] contention '[that the plaintiff] didn't send [the defendant] a written statement itemizing the disposition of the vehicle's sales proceeds,' which violates § 36a-785 (e) of RISFA and bars recovery." This contention was not raised in the defendant's amended answer, but was argued in her posttrial brief. The trial court did

not rule on the motion for articulation and the defendant did not file a motion to compel the court to issue a ruling.

[14] Although the defendant articulates this argument as part of her itemized statement claim, because this question was, in fact, properly preserved, we reach the merits of this claim.